1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10   KENNETH REDELL HENRY,                    CASE NO. 12cv2009-MMA(KSC)

11                              Petitioner,    REPORT AND RECOMMENDATION
                                               RE PETITION FOR WRIT OF
12        vs.                                  HABEAS CORPUS AND REQUEST
                                               FOR EVIDENTIARY HEARING
13   MATTHEW CATE,

14                             Respondent.

15

16        Petitioner Kenneth Redell Henry, a state prisoner, has filed a Petition for Writ of

17   Habeas Corpus pursuant to Title 28, United States Code, Section 2254, challenging his

18   conviction and sentence in San Diego Superior Court Case No. SCD214252. [Doc.

19   No. 1, Pet'n, at p. 1; Lodgment No. 1, at pp. 1.]

20        This Report and Recommendation is submitted to United States District Judge

21   Michael M. Anello pursuant to Title 28, United States Code, Section 636(b), and Civil

22   Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern

23   District of California.  Based on the moving and opposing papers, and for the reasons

24   outlined below, this Court recommends that the Petition be DENIED.  This Court also

25   recommends that petitioner's request for an evidentiary hearing be DENIED.

26                   ***FACTUAL AND PROCEDURAL BACKGROUND***

27        A Probation Report filed in San Diego Superior Court on March 13, 2009

28   indicates that petitioner's criminal history began as early as 1981. [Lodgment No. 1, at

p. 30.] Several more recent convictions are relevant to the allegations in the Petition. First, in 2001, petitioner was involved in a domestic violence incident with a girlfriend and was convicted of making a criminal threat (Cal. Penal Code § 422), a "serious felony" and a strike offense under California's Three Strikes law (Case No. SCS157681).[1] It appears that as part of a plea agreement other charges were dismissed, including sodomy by force (§ 286(c)(2)) and driving with willful disregard of safety while fleeing a police officer (§ 2800.2(a)). [Lodgment No. 1, at p. 33.]

In 2004 and 2005, petitioner was charged in three more criminal cases. In Case No. SCD183137, petitioner was charged with possession of methamphetamine (Cal. Health & Safety § 11377(a)) as a result of a parole search of his motel room. [Lodgment No. 1, at p. 33.] In Case No. SCD185732, petitioner was charged with selling cocaine base to an undercover officer (Cal. Health & Safety § 11352(a)) while he was released from custody on bail (§ 12022.1(b)). [Lodgment No. 1, at p. 34.] In Case No. SCD191245, petitioner was charged with possession of cocaine base for sale (Cal. Health & Safety § 11351.5) while he was released from custody on bail (§ 12022.1(b)). [Lodgment No. 1, at p. 34.] The record indicates that these cases were combined for sentencing purposes. Consecutive sentences were imposed as to each case but the sentences were suspended and petitioner was granted two years of probation. [Lodgment No. 1, at pp. 36, 39.] Although relevant to the arguments made in petitioner's current Federal Petition, the record does not include any lodgments from these prior probation cases, so only limited information is available about them in the above-referenced Probation Report.

While he was on probation in Case Nos. SCD183137, SCD185732, and SCD191245 (collectively, "the probation cases"), petitioner was charged with new offenses in Case No. SCD214252. [Lodgment No. 1, at pp. 36, 39.] Based on evidence

_____

[1]    Cal Penal Code §§ 667(a)(4); 1192.7(c)(38). *See also*, *People v. Queen*, 141 Cal.App.4th 838, 842-843 (2006) (stating that prior convictions for criminal threats are properly treated as strikes regardless of whether they are incurred by plea or verdict, as long as they were charged and sentenced as felony offenses rather than as misdemeanors).

presented at a preliminary hearing in the new case (No. SCD214252), petitioner's probation was formally revoked in the probation cases and these matters were set for sentencing pending resolution of Case No. SCD214252. [Lodgment No. 2, at p. 99.] As a result, Case No. SCD214252 and the prior probation cases were connected for sentencing purposes.

The charges in the new case (No. SCD214252) were based on two separate incidents on  June 6, 2008 and June 12, 2008 involving sales of cocaine base to an undercover officer.  In addition to petitioner, the case named two other co-defendants who were involved in the sales. [Lodgment No. 1, at p. 1-15; 28-29; Lodgment No. 2, at pp. 6-81.] In an Amended Information filed on July 15, 2008, petitioner was charged as follows: Count 1, sale of cocaine base on June 6, 2008 (Cal. Health & Safety Code § 11352(a)); Count 2, possession of cocaine base for sale on June 6, 2008 (Cal. Health & Safety Code § 11351.5); Count 4, sale of cocaine base on June 12, 2008 (Cal. Health & Safety Code § 11352(a)); Count 5, possession of cocaine base for sale on June 12, 2008 (Cal. Health & Safety Code § 11351.5). [Lodgment No. 1, at pp. 1-8.] It was further alleged that petitioner served two prior prison terms within the meaning of California Penal Code Sections 667.5(b) and 668 and had a prior strike conviction under California Penal Code Sections 667(b) through (i), 1170.12, and 668. [Lodgment No. 1, at p. 12.]

On February 19, 2009, petitioner entered into a written plea agreement to plead guilty in the new case (No. SCD214252) to Count 4, sale of cocaine base on June 12, 2008, and to admit the prior strike, in exchange for a sentence of no more than ten years, with credits at the rate of 80 percent because of the prior strike, and dismissal of all other charges and allegations. [Lodgment No. 1, at pp. 21-23.] The written plea agreement does not state that it includes a resolution of the older probation cases. [Lodgment No. 1, at pp. 21-23.]

/ / /

/ / /

At the change of plea hearing in the new case (No. SCD214252) on February 19, 2009, the state trial court explained that as a result of the plea agreement petitioner's sentencing range was from six to ten years in state prison assuming the strike was used to calculate the sentence. [Lodgment No. 4, at pp. 26, 28.] Petitioner answered affirmatively when the trial court asked him whether he understood the form and had discussed it with his lawyer, and whether he agreed to give up the constitutional rights that were listed on the form. [Lodgment No. 4, at pp. 27-28.] Petitioner also indicated during the change of plea hearing that he understood he would be required to serve 80 percent of any sentence imposed because of his prior strike conviction.[2] [Lodgment No. 4, at p. 29.] The state trial court found there was an adequate factual basis to accept the plea based on petitioner's admission that he was involved in a sale of rock cocaine on June 12, 2008. [Lodgment No. 4, at p. 29-30.] Petitioner also admitted the prior strike conviction from 2001. [Lodgment No. 4, at p. 30.] The trial court then granted the prosecutor's motion to dismiss all remaining charges and allegations and referred the case for a pre-sentence investigation and report. [Lodgment No. 4, at p. 30.]

In a Probation Report filed on March 13, 2009, the probation officer provided the state trial court with a sentencing recommendation that considered the plea agreement

---

[2]   The Three Strikes Law imposes a 20 percent limitation on post-sentence conduct credit for prisoners with one prior strike conviction. *In re Martinez*, 30 Cal.4th 29, 34 (Cal. 2003), citing Ca. Penal Code §§ 1170.12, subd. (a)(5), 667, subd. (c)(5). The record of petitioner's change of plea hearing on February 19, 2009 includes the following colloquy:

> THE COURT: You also serve 80 percent of the time imposed if you go to prison with a strike on your record.  You're aware of that?
>
> THE DEFENDANT: 80 percent?
>
> THE COURT: If you go to prison on this case, you serve 80 percent.
>
> THE DEFENDANT: Oh.
>
> THE COURT: This is the strike.  You understand, right?
>
> THE DEFENDANT: Yeah.

[Lodgment No. 4, at p. 29.]

in new case (No. SCD214452) and the pending probation violations in the probation case.  Based on applicable law, the plea agreement, and all pending charges, plus enhancements, the probation officer recommended a total term of 15 years, 4 months in state prison.  To reach the total term, the probation officer recommended the middle term on the current charge in th new case (No. SCD214252), doubled as a result of the prior strike to 8 years.  The probation officer then added the following separate terms for each of the three probation cases: (1) a consecutive term of 8 months on Case No. SCD183137; (2) a consecutive term of 1 year, 4 months on Case No. SCD185732; and (3) a consecutive term of 1 year, 4 months on Case No. SCD191245. The probation officer also added an enhancement of two consecutive years under California Penal Code Section 12022.1(b), because petitioner committed a new offense while he was on probation in other cases.  In addition, the probation officer's recommendation included two consecutive one-year enhancements, because petitioner served two prior prison or jail terms within the meaning California Penal Code Section 667.5. [Lodgment No. 1, at p. 41.]

The state trial court did not follow the probation officer's recommended sentence of 15 years, 4 months in state prison.  Instead, on June 9, 2009, the state trial court imposed a 10-year sentence in accordance with the parties' written plea agreement.  To petitioner's benefit and apparently in consideration of his cooperation with authorities in other cases, the trial court also terminated probation in the probation cases without imposing any additional prison time.  No additional prison time was imposed for the probation violations in the prior probation cases even though the written plea agreement for a 10-year sentence in the new case (No. SCD214252) did not specifically include the probation violations as part of the agreement.  In pronouncing sentence, the state trial court provided the following explanation as to how it reached the ten-year term:

> The court is going to deny probation.  The term on Count 4 will be an upper term, that is five years.  The court is imposing the upper term after taking into consideration the nature of this particular conviction, which is not particularly aggravated, and, of course, the circumstances in mitigation at this juncture.  And the primary mitigants[sic] are the defendant's effort

at being of assistance, but weighing against that are substantial circumstances in aggravation, including prior convictions which are numerous, prior prison terms, and the fact that he was on probation when this crime was committed.  This defendant has achieved an optimal result by virtue of prison prior enhancements which were dismissed.  And also the court has taken into consideration, as a factor in mitigation, that were he to be sentenced on his trailing probation matters, consecutive sentencing would be required and there are additional enhancements that would lengthen his stay.  And the court is using the opportunity to terminate probation [on the trailing probation matters] as one of the reasons for imposing the upper term, in this case, to achieve an equitable sentence.

* * * *

Now, as to the trailing probation SCD matters, on each of those, probation is formally revoked, reinstated, and terminated forthwith.  Those are closed cases.

[Lodgment No. 5, at pp. 33-34.] The Abstract of Judgment also shows that petitioner was given credit against his sentence for time served prior to sentencing (Cal. Penal Code § 2900.5) and for good conduct while in custody prior to sentencing (Cal. Penal Code § 4019).  [Lodgment No. 1, at p. 43.]

On June 17, 2009, petitioner filed a Notice of Appeal indicating that in the new case (No. SCD214252) he wished to challenge his sentence or other matters occurring after the plea.  He also indicated that he wished to request a certificate of probable cause in order to challenge the validity of his plea agreement based on ineffective assistance of counsel. [Lodgment No. 1, at p. 47.] On July 2, 2009, the state trial court denied petitioner's request for a certificate of probable cause, because it found that petitioner had not shown reasonable constitutional, jurisdictional or other grounds to challenge the validity of his plea agreement. [Lodgment No. 1, at p. 51.] As a result, issues on direct appeal were limited to sentencing questions or other matters occurring after the plea.  Cal. Penal Code § 1237.5.

On direct appeal in the new case (No. SCD214252), petitioner argued that the state trial court abused its discretion in imposing the upper term sentence on Count 4. [Lodgment No. 6.] The judgment and sentence were affirmed by the California Court of Appeal in an unpublished written decision filed on August 12, 2010. [Lodgment No.

11.] A Petition for Review on the same grounds was then filed with the California Supreme Court on September 13, 2010. [Lodgment No. 12.] Petitioner also filed a supplemental brief in the California Supreme Court requesting review of his ineffective assistance of counsel claim. [Lodgment No. 13.]  However, the California Supreme Court summarily denied review on October 20, 2010.  [Lodgment No. 14.]

On November 19, 2010, petitioner prematurely filed a Petition in this Court raising new claims that were not raised on direct review in the state courts. [Case No. 10cv2398-JLS(WVG), at Doc. No. 1.] This Federal Petition was dismissed on March 6, 2012 without prejudice to the filing of another Federal Petition containing only exhausted claims. [Doc. No. 30, at p. 4.]

In November 2011, petitioner sought habeas corpus relief in the state trial court claiming that he received ineffective assistance of counsel during plea negotiations. [Lodgment No. 15.] As part of his claim, petitioner included allegations relating to a prior "probation contract" from 2007. [Lodgment No. 15, at p. 3.]  The state trial court denied the Petition on December 22, 2011, because petitioner failed to set forth a prima facie statement of facts that would entitle him to relief or to present enough evidence to substantiate his claim. [Lodgment Nos. 16, 17.] A Petition was then filed in the California Court of Appeal on January 17, 2012 raising the same claim, and this Petition was denied on March 9, 2012. [Lodgment Nos. 18-21.] Finally, a Petition raising the same claim was filed in the California Supreme Court on April 23, 2012, and the California Supreme Court summarily denied the Petition on July 11, 2012. [Lodgment Nos. 22-24.]

Petitioner filed the instant Federal Petition on August 13, 2012, once again claiming ineffective assistance of trial counsel in the new case (No. SCD 214252). [Doc. No. 1, Pet'n.]  Once again, petitioner included allegations in his Petition that relate to a prior "probation contract" in the probation cases. [Doc. No. 1, at p. 6.] In the Answer filed December 21, 2012, respondent stated that petitioner had exhausted his ineffective assistance of counsel claim by presenting it to the California Supreme Court

1  and that his Petition appeared to be timely under Title 28, United States Code, Section
2  2244(d). [Doc. No. 18, at p. 2.]

3  ### *DISCUSSION*

4  **I.     *Standard of Review.***

5  Federal habeas corpus relief is available only to those who are in custody in
6  violation of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  "A
7  federal court may not issue the writ on the basis of a perceived error of state law."
8  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "[A] mere error of state law is not a denial of
9  due process."  *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (internal quotations
10  omitted).

11  This Petition is governed by the provisions of the Antiterrorism and Effective
12  Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 327 (1997).
13  AEDPA imposes a "highly deferential standard for evaluating state-court rulings,
14  which demands that state-court decisions be given the benefit of the doubt."  *Woodford*
15  *v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotations omitted).  Under
16  AEDPA, a habeas petition "on behalf of a person in custody pursuant to the judgment
17  of a State court shall not be granted with respect to any claim that was adjudicated on
18  the merits in State court proceedings unless the adjudication of the claim– (1) resulted
19  in a decision that was contrary to, or involved an unreasonable application of, clearly
20  established Federal law, as determined by the Supreme Court of the United States; or
21  (2) resulted in a decision that was based on an unreasonable determination of the facts
22  in light of the evidence presented in the State court proceeding."   28 U.S.C.
23  § 2254(d)(1)&(2).  For purposes of section 2254(d)(1), "clearly established Federal
24  law" means "the governing legal principle or principles set forth by the Supreme Court
25  at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72
26  (2003).  Therefore, a lack of controlling Supreme Court precedent can preclude habeas
27  corpus relief. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

28  The AEDPA standard is highly deferential and "difficult to meet."  *Harrington*

1   *v. Richter*, __ U.S. ___, 131 S.Ct. 770, 785-786 (2011).  Federal habeas relief may be
2   granted under the "contrary to" clause of section 2254 if the state court applied a rule
3   different from the governing law set forth in Supreme Court cases, or if it decided a
4   case differently than the Supreme Court on a set of materially indistinguishable facts.
5   *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The focus of inquiry under the "contrary to"
6   clause is "whether the state court's application of clearly established federal law is
7   objectively unreasonable."  *Id.*  "[A]n unreasonable application is different from an
8   incorrect one."  *Id.*  In other words, federal habeas relief cannot be granted simply
9   because a reviewing court concludes based on its own independent judgment that the
10  state court decision is erroneous or incorrect.  *Id.*  Habeas relief is only available under
11  Section 2254(d)(1) "where there is no possibility fairminded jurists could disagree that
12  the state court's decision conflicts" with Supreme Court precedents.  *Harrington v.*
13  *Richter*, __ U.S. ___, 131 S.Ct. 770, 786 (2011).

14      Where there is no reasoned decision from the state's highest court, Federal Courts
15  "looks through" to the "last reasoned state-court opinion" and presume it provides the
16  basis for the higher court's denial of a claim or claims.  *Ylst v. Nunnemaker*, 501 U.S.
17  797, 805-806 (1991).  If the state court does not provide a reason for its decision, the
18  Federal Court must conduct an independent review of the record to determine whether
19  the state court's decision is objectively unreasonable.  *Crittenden v. Ayers*, 624 F.3d
20  943, 947 (9th Cir. 2010).  To be objectively reasonable, a state court's decision need not
21  specifically cite Supreme Court precedent.  "[S]o long as neither the reasoning nor the
22  result of the state-court decision contradicts [Supreme Court precedent]," the state
23  court's decision will not be "contrary to clearly established Federal law."  *Early v.*
24  *Packer*, 537 U.S. 3, 8 (2002).

25      "AEDPA also requires federal habeas courts to presume the correctness of state
26  courts' factual findings unless applicants rebut this presumption with 'clear and
27  convincing evidence.' § 2254(e)(1)."  *Schriro v. Landrigan*, 550 U.S. 465, 473-474
28  (2007).  In addition, Section 2254(e)(2) restricts the discretion of federal habeas courts

1  to grant an evidentiary hearing.  28 U.S.C. § 2254(e)(2).  Section 2254(e)(2) states as

2  follows:

3  > If the applicant has failed to develop the factual basis of a
   > claim in State court proceedings, the court shall not hold an

4  > evidentiary hearing on the claim unless the applicant shows
   > that--

5

6  > (A) the claim relies on--

7

8  > (i) a new rule of constitutional law, made retroactive to cases
   > on collateral review by the Supreme Court, that was
   > previously unavailable; or

9

10 > (ii) a factual predicate that could not have been previously
    > discovered through the exercise of due diligence; and

11

12 > (B) the facts underlying the claim would be sufficient to
    > establish by clear and convincing evidence that but for

13 > constitutional error, no reasonable factfinder would have
    > found the applicant guilty of the underlying offense.

14

15 28 U.S.C.A. § 2254(e)(2).

16 ### II.   _Ineffective Assistance of Counsel._

17      Trial counsel is generally presumed competent, so the burden rests on the accused

18 to overcome this presumption and demonstrate a constitutional violation. _United States_

19 _v. Cronic_, 466 U.S. 648, 658 (1984).  To prevail on a claim of ineffective assistance of

20 trial counsel, a habeas petitioner must show that "counsel made errors so serious that

21 counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."

22 _Strickland v. Washington_, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must

23 be whether counsel's assistance was reasonable considering all the circumstances." _Id._

24 at p. 688. When considering all of the circumstances, counsel must be given "wide

25 latitude . . . in making tactical decisions." _Id._ at 689.  In other words, a reasonable

26 tactical decision cannot serve as the basis for a finding that counsel was constitutionally

27 ineffective. _Id._  In assessing an ineffective assistance of counsel claim, Federal Courts

28 must also be "highly deferential," avoid "the distorting effects of hindsight," and

1  "indulge a strong presumption that counsel's conduct falls within the wide range of
2  reasonable professional assistance." *Id.*

3      A habeas petitioner also cannot prevail on a claim of ineffective assistance of
4  counsel without showing that counsel's performance prejudiced the defense. *Id.* at 687.
5  To establish prejudice, a defendant must demonstrate "there is a reasonable probability
6  that, but for counsel's unprofessional errors, the result of the proceeding would have
7  been different. A reasonable probability is a probability sufficient to undermine
8  confidence in the outcome." *Id.* at 694. Because a defendant must prove both elements
9  of the *Strickland* test in order to prevail, a court may reject a claim of ineffective
10 assistance of counsel if it finds counsel's performance was reasonable, or the claimed
11 error was not prejudicial. *Id.* at 687.

12     "The standards created by *Strickland* and § 2254(d) are both 'highly deferential.'
13 [citations omitted], and when the two apply in tandem, review is 'doubly' so. [Citation
14 omitted.] The *Strickland* standard is a general one, so the range of reasonable
15 applications is substantial. [Citation omitted.] Federal courts must guard against the
16 danger of equating unreasonableness under *Strickland* with unreasonableness under
17 § 2254(d). When 2254(d) applies, the question is not whether counsel's actions were
18 reasonable. The question is whether there is any reasonable argument that counsel
19 satisfied *Strickland's* deferential standard." *Harrington v. Richter*, __ U.S. ___, 131
20 S.Ct. 770 at 788. "As a condition for obtaining habeas corpus from a federal court, a
21 state prisoner must show that the state court's ruling on the claim being presented in
22 federal court was so lacking in justification that there was an error well understood and
23 comprehended in existing law beyond any possibility for fairminded disagreement."
24 *Id.* at 786-787.

25     **III.   _Petitioner's Ineffective Assistance of Counsel Allegations_.**

26     Ground One of the Petition alleges ineffective assistance of trial counsel because
27 petitioner believes his attorney was "fully aware of the situation" but allowed the trial
28 court to impose an "illegal enhancement" in violation of a "probation contract" in the

probation cases where his prior strike was stricken.  He further claims that counsel was ineffective because he advised petitioner to sign a "*Blakely* waiver," which allegedly resulted in a severe increase to his sentence.  Petitioner also contends that the results of his 2009 sentencing would have been "a lot better" if counsel had been effective, because he would have received a 10-year sentence with half-time credits rather than a 10-year sentence at 80 percent. [Doc. No. 1, at p. 6.]

In Ground Two of the Petition, it is alleged that petitioner received ineffective assistance of trial counsel, because his attorney failed to fully advise him that his original offer during plea negotiations was "two years and ten years with half-time credits and back-time credits," so he would have been paroled in three years. [Doc. No. 1, at p. 7.]  Petitioner claims he was not advised that the offer included half-time credits. [Doc. No.1, at p. 7.]  If he had been so advised, petitioner claims that the results of the proceeding would have been different. [Doc. No. 1, at p. 7.] Construed liberally, petitioner's argument is that his sentence would have been more favorable if he had been properly advised by counsel about this alleged 12-year offer, because he would have accepted it and would have been paroled in three years based on his alleged half-time credits and credit for time already served.[3] [Doc. No. 1, at p. 7.]

In Ground Three of the Petition, it is alleged that petitioner's trial counsel "purposely sabotaged the . . . entire case" because he was "very upset" over the amount he was paid to handle petitioner's case. [Doc. No. 1, at p. 8.] Petitioner believes the records shows that even though his pending cases were separate they were "conjoined" for purposes of the plea agreement and sentencing in 2009 because of his work as an informant.  Because the cases were "conjoined," petitioner believes that the original plea offer included half-time and back time credits and he would "have taken the deal" if he had been informed of this by counsel at the time. [Doc. No. 1, at p. 8-9.]

In reasoned decisions the state trial and appellate courts rejected petitioner's

---

[3]        "Prisoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

ineffective assistance of counsel claims for failure to state a prima facie case for relief or to submit any evidence to substantiate the allegations.  [Lodgment Nos. 17, 21.] Here, the record before the Court also does not include enough facts to support petitioner's contention that his trial counsel's performance was ineffective in connection with the plea negotiations and sentencing in Case No. SCD214252 or the probation cases that were also terminated at the same sentencing hearing.  First, the exhibits submitted by petitioner in support of his ineffective assistance of counsel claims [Doc. No. 11] are not enough to substantiate his main factual contentions. Second, as outlined more fully below, the facts and circumstances shown in the record before the Court do not suggest counsel's assistance was ineffective in connection with the disposition of the probation violations alleged in the prior probation cases or with the plea agreement negotiated in the new case (No. SCD214252) in 2009.

### A.    *Alleged "Probation Contract" from Prior Probation Cases.*

Although petitioner alleges that his counsel was aware of a "probation contract" in the prior probation cases but allowed the trial court to impose an "illegal enhancement" that violated this contract, petitioner did not submit a copy of this alleged contract.  There is also no copy of any such agreement in the state court record for Case No. SCD214252.  Although it is unclear on the papers submitted, this Court will assume for purposes of analysis that the "probation contract" petitioner refers to is the plea agreement in the prior probation cases.  Only limited information is available in the record about this plea agreement in the Probation Report prepared in connection with the new case (No. SCD214252). [Lodgment No. 1, at pp. 33-34.]

According to the Probation Report filed on March 13, 2009, petitioner was afforded lenient treatment in the prior probation cases.  Under California's Three Strikes law, a defendant with "one or more prior serious and/or violent felony

/ / /

/ / /

convictions" is ineligible for probation on a subsequent felony conviction. Cal. Penal Code 667(c)(2).[4] In addition, the trial court's discretion to strike a prior conviction for sentencing purposes is limited. The circumstances must be "extraordinary" for a career criminal to be deemed to fall outside the scheme of the Three Strikes law. *People v. Carmony*, 33 Cal.4th 367, 375 (2004). Although no "extraordinary" circumstances appear in the record before the Court, the state trial court decided to strike petitioner's prior conviction from 2001 in order to grant probation in the probation cases.[5]

Petitioner then violated this plea agreement when he committed the new offenses charged in Case No. SCD214252. Once he violated this plea agreement by committing the new offenses that were charged in Case No. SCD214252, his probation was revoked and terminated in these prior probation cases. [Lodgment No. 5, at pp. 33-34.] As a result, petitioner was facing a potential prison sentence in these prior probation cases as well as in the new case (No. SCD214252). Although the trial court struck petitioner's prior strike conviction in order to grant probation, there is nothing to indicate it was stricken for any other purpose. Generally, under California law, "when a court has struck a prior conviction allegation it has not 'wipe[d] out' that conviction as though the defendant never suffered it; rather, the conviction remains a part of the defendant's personal history" and is therefore available for other sentencing purposes

---

[4] In pertinent part, California Penal Code Section 667, Subdivision (c), states as follows:

Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions as defined in subdivision (d), the court shall adhere to each of the following:

* * * *

(2) Probation for the current offense shall not be granted, nor shall execution or imposition of the sentence be suspended for any prior offense.

[5] For example, the Probation Report indicates that petitioner had a steady stream of criminal offenses between 1981 and 2001 and was on parole when he committed the offenses in these prior probation cases. [Lodgment No. 1, at pp. 33-34.]

in the same case or in other cases.   *See, e.g.*, *People v. Garcia*, 20 Cal.4th 490, 499 (1999).  Therefore, without more, it appears that the prior strike conviction could have been used to impose or enhance a prison sentence in the probation cases once petitioner violated the plea agreement by committing the offenses in the new case (No. SCD214252).

In any event, the trial court imposing a prison sentence in the new case (No. SCD214252), would not have been  bound by any of the terms and conditions of the plea agreement in the prior probation cases.  Nevertheless, the trial court record for the new case (No. SCD214252) indicates that petitioner's probation in the probation cases was terminated and, to petitioner's benefit, no prison sentence was imposed in these cases.  Instead, the trial court only imposed a prison sentence in the new case (No. SCD21452) as a result of the plea agreement executed in this case on February 19, 2009. [Lodgment No. 5, at pp. 33-34.] Therefore, it is simply untenable that petitioner's counsel was ineffective, because he knowingly allowed the trial court to impose an "illegal enhancement" in violation of a "probation contract" in the probation cases where his prior strike was stricken. [Doc. No. 1, Pet'n, at p. 6.]

### B.   *Plea Agreement in the New Case (No. SCD214252).*

Although petitioner contends that he did not receive constitutionally adequate advice in connection with an original plea offer in the new case (No. SCD214252) that provided for a sentence of "two years and ten years with half-time credits and back-time credits" with a release in only three years [Doc. No. 1, at p. 7], petitioner has not shown that such an offer was actually made.  In support of this contention, petitioner only cites a portion of a transcript dated July 28, 2008 from a sealed hearing.  This hearing was apparently held pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970) to discuss petitioner's concerns about his representation by counsel.  [Doc. No. 11, at pp. 14-16.] During this hearing, counsel said, "[Petitioner] has some anxiety about one of these probation revocation cases where –." [Doc. No. 11, at p. 15.] At that point, petitioner stated as follows: "Of course, I got two years over my head." [Doc. No. 11, at p. 15.]

This statement, standing alone, is not enough to prove that the alleged offer was actually made. Nor is there any other evidence in the record, such as a declaration by counsel, to show that this offer was actually made.

Based on California law and the circumstances presented, it is unreasonable to expect that petitioner would have been offered a plea agreement that would have allowed for his release in only three years. The Probation Report prepared and filed prior to the 2009 sentencing in Case No. SCD214252 indicated that petitioner's exposure for this case and the probation violations in the probation cases was in excess of 15 years in state prison. [Lodgment No. 1, at p. 41.]

Based on California law and the circumstances presented, it is also unreasonable to expect that petitioner would have been offered a more favorable plea agreement that included the ability to accrue half-time credits while serving a state prison sentence. California law does not allow a state prisoner with a prior "serious felony" or strike conviction to accrue half-time credits against a term of imprisonment.[6] In addition, as outlined more fully above, petitioner acknowledged during his change of plea hearing on February 19, 2009 in the new case (No. SCD214252) that he would be serving "80 percent of the time imposed." [Lodgment No. 4, at p. 29.]

/ / /

---

[6] In pertinent part, California Penal Code Section 667, Subdivision (c), states as follows:

> Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions as defined in subdivision (d), the court shall adhere to each of the following:
>
> * * * *
>
> (5) The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the total term of imprisonment imposed and shall not accrue until the defendant is physically placed in the state prison.

It is true that the California legislature did amend California Penal Code Section 4019, effective January 25, 2010, to allow certain offenders to accrue pre-sentence conduct credits at the rate of four days for every four days of pre-sentence custody. [Lodgment No. 11, at pp. 4-6.]  However, these credits were not available at the time petitioner negotiated his plea agreement, which was executed on February 19, 2009 prior to the Section 4019 amendments.  In addition, the California Court of Appeal concluded that petitioner did not qualify for these increased credits, even if the state legislature intended them to apply on a retroactive basis, because his criminal history included a prior strike conviction. [Lodgment No. 11, at pp. 4-6.]

Even assuming petitioner was, as he claims, expecting lenient treatment because he was cooperating with authorities on other cases, he had no reason to expect the state trial court in the new case (SCD214252) to once again afford him the benefit of disregarding his prior strike conviction for sentencing purposes.  Nor is there any reason to conclude that counsel's assistance was ineffective simply because the prior strike offense was used to increase petitioner's sentence in the new case (No. SCD214252). Based on the record before the Court, there was simply no viable basis for counsel to even argue that the strike offense should be stricken once again.

Contrary to petitioner's contention, the outcome of the new case (No. SCD214252) and the probation cases was quite favorable to him when viewed in light of his sentencing exposure on all charges that were pending against him at the time in question.  Instead of a sentence in excess of 15 years in state prison, the state trial court followed the plea agreement of February 19, 2009 [Lodgment No. 1, at pp. 21-25] and imposed a significantly lower sentence of 10 years in state prison. [Lodgment No. 5, at pp. 33-34.] In addition, as noted above, the trial court also terminated the probation cases without imposing a separate, additional prison sentence.  Therefore, the record simply does not support petitioner's contention that he received ineffective assistance of counsel in connection with the plea negotiations that resulted in the plea agreement in the new case (No. SCD214252) in 2009.

### C.   *"Blakely Waiver."*

There is also no merit to petitioner's contention that his counsel was ineffective, because he advised him to sign a *"Blakely* waiver" that "severely increased" his sentence.  The "*Blakely* Waiver" states as follows:

> I understand I have the right to a jury or court trial, the right to confront and cross-examine witnesses, the right to subpoena witnesses, the right to present evidence, and the right to testify or remain silent, as to any sentencing factors that may be used to increase my sentence on any count or allegation to the upper or maximum terms provided by law.
>
> I now give up these rights and agree to allow the determination as to the existence of any fact in aggravation to be made by the sentencing judge in accordance with existing California statutes and Rules of Court.  I also agree this waiver shall apply to any future sentence that may be imposed in the event probation is revoked.

[Lodgment No. 1, at p. 25.]

The *"Blakely* Waiver" is related to a line of Supreme Court cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *In Apprendi v. New Jersey*, the United States Supreme Court held as follows: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490. Applying its earlier decision in *Apprendi v. New Jersey*, 530 U.S. at 490, the Supreme Court in *Blakely v. Washington*, 542 U.S. 296 (2004), held that the defendant's Sixth Amendment right to a trial by jury was violated when the state trial court imposed an "exceptional" sentence greater than the maximum term provided by state law after making a factual finding that the defendant committed the underlying acts with deliberate cruelty.  *Id.* at 303-304.  Then, in *Cunningham v. California*, 549 U.S. 270 (2007), the Supreme Court considered the constitutionality of California's former determinate sentencing law, which provided that state trial courts "shall" impose the "the middle term, unless there are circumstances in aggravation or mitigation of the crime."  Former Cal. Penal Code § 1170(b).  As a result, state court judges, rather than

juries, made factual findings that could expose a defendant to an aggravated or upper term, and the Supreme Court concluded this also violated a defendant's Sixth Amendment right to a jury trial. *Id.* at 293. Thus, it is apparent based on the content of the subject "*Blakely* Waiver" that it was intended to address uncertainties in California's determinate sentencing law after the Supreme Court decided *Blakely v. Washington*, 542 U.S. at 296.

Here, the record shows that defendant was sentenced on June 9, 2009. [Lodgment No. 5, at pp. 33-34.] In response to *Cunningham v. California*, 549 U.S. at 270, the California legislature amended its determinate sentencing law effective March 30, 2007. *People v. Sandoval*, 41 Cal.4th 825, 836, fn. 2 (2007). As a result of these amendments, state trial courts now have the discretion under amended section 1170(b) to impose the lower, middle, or upper term specified by statute without stating ultimate facts deemed to be aggravating or mitigating under the circumstances and without weighing aggravating and mitigating circumstances. *Id.* at 847. Instead, "a trial court is free to base an upper term sentence upon any aggravating circumstances that the court deems significant, subject to specific prohibitions." *Id.* at 848. In other words, the amendments to section 1170(b) essentially eliminated the middle term as the statutory maximum absent aggravating factors. In addition, the California Supreme Court in *People v. Sandoval* held that it is constitutionally acceptable to apply the amended version of section 1170(b) in all sentencing proceedings conducted after March 30, 2007, the effective date of the amendments. *Id.* at 845-857.

Based on the foregoing, it is apparent that the "*Blakely* waiver" was unnecessary in petitioner's case and did not result in a "severely increased" sentence. Even if petitioner did not sign the "*Blakely* waiver," the state trial court was already authorized by the amendments to section 1170(b) and the California Supreme Court's decision in *People v. Sandoval*, 41 Cal.4th at 825, to impose an upper term on the new case (No. SCD214252) without violating the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. at 296. In addition, the state trial court explained its reasons for

imposing the upper term on the record as required by Rule 4.420(e) of the California Rules of Court, and there is nothing to show that these reasons were unlawful. [Lodgment No. 5, at pp. 33-34.] Moreover, petitioner agreed in a written plea agreement to plead guilty in exchange for a sentence of no more than 10 years.  This agreement was beneficial to him, because his actual sentencing exposure for all pending charges in the new case and the prior probation cases was 15 years or more. [Lodgment No. 1, at p. 41.] The trial court followed the plea agreement by imposing a 10-year term, so petitioner received the benefit of his bargain.  The trial court also terminated the probation cases without imposing any additional prison time even though the plea agreement did not require the Court to do so.  Therefore, even if petitioner could show it was unreasonable for his attorney to advise him to sign the "*Blakely* waiver," petitioner cannot prevail on a claim of ineffective assistance of counsel, because he cannot show any prejudice to the outcome of his case.

Based on the foregoing, it was reasonable for the California courts to reject petitioner's claims of ineffective assistance of trial counsel.  As a result, there is nothing to indicate the state court proceedings resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Supreme Court law.  There is also nothing to establish that the state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  It is therefore RECOMMENDED that the District Court DENY petitioner's claims of ineffective assistance of trial counsel.

### *IV.*   *Petitioner's Request for an Evidentiary Hearing.*

In the Petition and Traverse, petitioner requests an evidentiary hearing in Federal Court. [Doc. No. 1, at p. 18; Doc. No. 20, at p. 1, 4-5.] Petitioner argues that he is entitled to an evidentiary hearing in Federal Court because he has met his burden of "pleading adequate grounds for relief by including [the] reporter's transcript that [includes] very powerful evidence," as well as "the Blakely Waiver [and] the probation contract of 2007." [Doc. No. 1, Pet'n, at p. 18.]  Petitioner also argues in his Traverse

that he is entitled to an evidentiary hearing because he has shown that his ineffective assistance of counsel claim has merit, since there was something "seriously wrong" with his sentence as there is "nothing aggravated about petitioner['s] $40 drug case." [Doc. No. 20, at pp. 4-5.]

AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. [¶]It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. at 474.

As outlined above, the state court record resolves the issues and refutes the factual allegations in the Petition. In short, petitioner has not presented colorable claims that, if proved, would entitle him to relief. Nor has petitioner shown there are factual disputes that would entitle him to relief if decided in his favor at an evidentiary hearing. Petitioner has not referenced or submitted clear and convincing evidence to rebut the presumption of correctness of the facts determined in the state court proceedings. For these reasons, it is RECOMMENDED that the District Court DENY petitioner's request for an evidentiary hearing.

### *CONCLUSION*

For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an order (1) approving and adopting this Report and Recommendation; and, (2) DENYING the Petition for Writ of Habeas Corpus.

IT IS FURTHER RECOMMENDED that the District Court DENY petitioner's request for an evidentiary hearing.

1      IT IS HEREBY ORDERED THAT any party may file written objections with the

2 District Court and serve a copy on all parties ***no later than May 2, 2014***.  The document

3 should be entitled "Objections to Report and Recommendation."

4      IT IS FURTHER ORDERED THAT any reply to the objections shall be filed

5 with the District Court and served on all parties ***no later than <u>May 16,  2014</u>***.  The

6 parties are advised that failure to file objections within the specified time may waive the

7 right to raise those objections on appeal of the District Court's order.  *See Turner v.*

8 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th

9 Cir. 1991).

10      IT IS SO ORDERED.

11 DATED:  April 4, 2014

12

13

14                 KAREN S. CRAWFORD
                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28